# EXHIBIT A

DOCUMENT 2

Case 2:25-cv-00754-RDP    Document 1-1    Filed 05/14/25    Page 2 of 13

ELECTRONICALLY FILED
5/14/2025 9:46 AM
01-CV-2025-901919.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| SPRINGFIELD MHP, LLC, and GRASMERE MHP, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| LEGACY HOUSING CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTIVE RELIEF, AND DAMAGES

### Introduction

In this Complaint, Plaintiffs, Springfield MHP, LLC ("Springfield") and Grasmere MHP, LLC ("Grasmere"), seek among other things a temporary restraining order from this Court prohibiting the Defendant, Legacy Housing Corporation ("Legacy") from proceeding with a non-judicial foreclosure sale of commercial property owned by Springfield and Grasmere, which is currently scheduled for May 20, 2025.

### Jurisdiction and Venue

1.  This Court has jurisdiction pursuant to Sections 12-11-30(1), 12-11-31(3), and 12-11-33(2) of the Code of Alabama.

2.  Venue is proper in this Court pursuant to Rule 82 of the Alabama Rules of Civil Procedure.

### Parties

3.  Springfield and its affiliate, Grasmere, are Alabama limited liability companies. They own property in Jefferson County, Alabama (the "Property"). That Property, which is

1

identified in the legal description attached as Exhibit A, is currently used as a mobile or modular home park.

4. Legacy is a Texas corporation. It manufactures modular homes.

## The Facts

5. In 2020, Springfield discussed the purchase or lease of six (6) modular homes from Legacy. At the time, Legacy quoted a purchase price of roughly $33,000 per home. Springfield ultimately decided to lease the homes. Legacy manufactured the homes and delivered them to Springfield within about three (3) months.

6. On or about December 20, 2020, Springfield and Legacy entered into the transaction that is the subject of this dispute. Springfield and Legacy signed a Promissory Note (the "Note"), pursuant to which Legacy loaned Springfield $300,000.00. A true and correct copy of the Note is attached as Exhibit B.[1] The purpose of the loan was to enable Springfield to improve the Property.

7. The Note provides for a term of four (4) years. The principal balance bears interest at 7.9%. The Note required interest payments quarterly, with the entire principal balance due and payable on December 20, 2024. Springfield and Grasmere gave Legacy a deed in trust and mortgage on the Property to secure the Note.

8. Section 2 of the Note describes a mechanism for Springfield to purchase a certain number of modular homes from Legacy during the term of the Note. Section 2 provides in its entirety as follows:

> In consideration for funds advanced, Maker agrees to purchase six (6) Legacy manufactured homes ("Homes") per quarter, beginning in the fourth (2nd) [sic] quarter of 2021, and continuing each quarter until Maker has purchased no fewer

---

[1] Although the face amount of the Note is $400,000.00, Legacy advanced only $300,000.00.

2

than one hundred (100) Homes prior to the maturity date of the Note. Each Home will be produced in Legacy's Georgia facility. If in any quarter Maker fails to purchase six (6) homes Lender will assess a penalty of three-thousand dollars ($3000) per Home not purchased, said penalty to be added to the Principal Amount and against which interest may be assessed as specified under the terms of this Note.

Springfield intended to lease the modular homes to residents and to use the income stream from those leases to satisfy the Note.

9. As the Court can see, Section 2 purports to assess a contractual "penalty" in the event the Homes are not purchased. Indeed, it uses the word "penalty" not once, but twice. Moreover, there is no description of the price Legacy intends to charge for the Homes or the time for Legacy's shipment or delivery of the Homes.

10. In the fourth quarter of 2021, in accordance with Section 2 of the Note, Springfield placed an order for six (6) Homes. Springfield made a downpayment on the order.

11. In the first quarter of 2022, again in accordance with Section 2 of the Note, Springfield placed an order for another six (6) Homes. Springfield again made a downpayment on the order.

12. By February 2022, Legacy had increased the price for each Home by almost $20,000. Moreover, Legacy had not delivered any of the Homes. Springfield contacted Legacy numerous times, asking about the status of the Homes Springfield had ordered, but Legacy would not provide any definitive information or specific dates of delivery. On February 18, 2022, a Legacy employee told Springfield that Legacy had a backlog "of nearly a year."

13. On March 3, 2022, Legacy emailed Springfield, stating that Legacy was incurring increased material costs, material shortages, supply chain and freight problems and that Legacy would be increasing its price (yet again). Obviously recognizing a significant change in

3

circumstances, Legacy offered Springfield an opportunity to cancel. Springfield promptly and reluctantly notified Legacy that Springfield was cancelling any orders, and any obligation to order, any Homes from Legacy.

14. In the second quarter of 2022, Springfield heard nothing further from Legacy – no update on its pricing, no update on its delivery times, and no inquiry about Springfield's purchase of Homes.

15. On August 31, 2022, Springfield again notified Legacy, this time in writing, that it considered any further obligation to purchase the Homes described in Section 2 of the Note to be cancelled. Springfield also asked Legacy to confirm its receipt and acknowledgement of Springfield's notice. Legacy, however, did not respond.

16. In the fourth quarter of 2022, Springfield heard nothing further from Legacy about the purchase of Homes.

17. In the first quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

18. In the second quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

19. In the third quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

20. In the fourth quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

21. In the first quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

22.     In the second quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

23.     In the third quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

24.     Throughout the term of the Note, Springfield continued to make the interest payments required by the Note in a timely manner.

25.     On September 13, 2024, Daren Starnes at Legacy sent an email to Springfield suggesting for the first time that, in addition to the original principal amount, Springfield owed $216,000.00 in contractual "penalties," or $3000 for each Home Springfield did not purchase during the term of the Note. Legacy offered no explanation or basis for the "penalties."

26.     Not long thereafter, on November 21, 2024, Robert Oswald, a Finance Manager at Legacy, sent Springfield a letter confirming that the payoff o.n the Note did not include any "penalties," but rather was indeed only the original principal balance, or $300,000.00, plus a small amount of interest, for a total of $301,942.62. A copy of that letter is attached as Exhibit C

27.     On December 12, 2024, Keaton Shepard, another Finance Manager at Legacy, sent an email to Springfield, again confirming that the payoff was $301,942.62 and again confirming that the payoff did not include any "penalties." A copy of that email is attached as Exhibit D.

28.     On December 16, 2024, prior to the maturity date of the Note, Springfield informed Legacy that it was in the process of selling the Property and requested a short extension, so that a sale of the Property could be concluded and the Note paid from the sale proceeds. Over the course of the next day or so, Springfield provided Legacy with additional

5

details. By January 2025, Springfield had received an offer of approximately $1,300,000.00, and it relayed that information to Legacy.

29. Apparently, the sale caught the attention of Mr. Starnes. Contrary to the payoffs that Legacy's finance managers had previously provided to Springfield, Mr. Starnes announced that the payoff on the Note was not $301,942.62, but rather $607,435.22, which now included approximately $300,000.00 in contractual "penalties."

30. Springfield contested the "penalties" and engaged in extensive discussions with Legacy to resolve the dispute, but Legacy continued to demand that the "penalties" be paid.

31. On April 23, 2025, Legacy initiated non-judicial foreclosure proceedings on the Property. A copy of a letter from Legacy's Alabama counsel, demanding payment of $613,949.38 and enclosing a notice of foreclosure, is attached as Exhibit E.

32. Any attempt by Springfield to tender less than the amount wrongfully demanded by Legacy would be futile at this point.

## COUNT I

## DECLARATORY JUDGMENT

33. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

34. This count is brought pursuant to Alabama's Declaratory Judgment Act. Ala. Code § 6-6-220 et seq.

35  Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that it is nothing more than a contractual penalty. Such provisions are unenforceable as a matter of law.

36. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that the price Legacy ultimately sought to charge for the Homes was not reasonable.

37. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that Legacy could not deliver the Homes within a reasonable time.

38. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds the Legacy's breach of Section 2 substantially impaired the value of the contract, and Springfield seasonably notified Legacy of Springfield's cancellation.

39. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that Legacy is estopped to now insist that Springfield owes contractual "penalties," that Legacy is guilty of laches, and that Legacy waived its ability to assess such "penalties."

WHEREFORE, Springfield demands a declaration that Section 2 of the Note is void and unenforceable and that any attempt by Legacy to collect or assess the contractual "penalties" set out in Section 2, including but not limited to the foreclosure currently set for May 20, 2025, would be wrongful and unlawful.

## COUNT TWO

## WRONGFUL FORECLOSURE

40. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

41. Legacy has wrongfully and incorrectly calculated the balance due under the Note. Legacy is using foreclosure not for the purpose of securing its debt, but for the purpose of

7

oppressing Springfield, forcing Springfield to pay contractual "penalties" that it does not owe, and enabling Legacy to acquire the Property for itself.

WHEREFORE, Plaintiffs demand a temporary restraining order barring Legacy from proceeding with a non-judicial foreclosure on May 20, 2025, and preliminary injunctive relief barring Legacy from any foreclosure attempt based on a debt that is not owed.

## COUNT THREE

## BREACH OF CONTRACT

42. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

43. Legacy has breached the Note, including but not limited to Section 2 of the Note, and has failed to act in good faith.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, interest, costs, and attorneys' fees.

## COUNT FOUR

## NEGLIGENT MISREPRESENTATION

44. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

45. Legacy negligently misrepresented that it would be able to supply Homes to Springfield within a reasonable time and at a reasonable price.

46. Legacy's representations were false, and Springfield has been damaged as a result.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, interest, costs, and attorney fees.

## COUNT FIVE

## SUPPRESSION

47. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

48. Legacy intentionally suppressed and concealed its intent to insist upon the contractual "penalties" set out in Section 2 of the Note, despite its inability to provide the Homes described in Section 2. Given the parties' contractual relationship, course of performance, and written communication in August of 2022, Legacy was under a duty to disclose in 2022, again in 2023, and again in 2024, that it was continuing to accrue and assess the contractual "penalties" set out in Section 2. Legacy's failure to do so has damaged Springfield.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, punitive damages, interest, costs, and attorney fees.

## COUNT SIX

## TORTIOUS INTERFERENCE

49. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

50. Legacy has wrongfully and intentionally interfered in the existing and potential business and contractual relationship between Plaintiffs and the putative buyer of the Property. Legacy has used its wrongful foreclosure to threaten the pending sale and thereby force Plaintiffs to concede to Legacy's wrongful demand that Springfield pay unenforceable "penalties." Legacy's actions have now not only delayed the planned sale of the Property, at significant cost to Plaintiffs, but have jeopardized Plaintiffs' ability to sell the Property at all. Legacy acted willfully and without justification.

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, costs, and attorney fees.

## COUNT SEVEN

## SLANDER OF TITLE

51. Springfield restates each of the allegations in the paragraphs of their Complaint as if fully set forth here.

52. By publishing notice of a non-judicial foreclosure sale based upon an incorrect, unlawful, and wrongful debt, Legacy has libeled and slandered Plaintiffs' title to the Property. Legacy falsely and maliciously impugned Plaintiffs' title.

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, costs, and attorney fees.

Respectfully submitted,

*s/ James P. Pewitt*
James P. Pewitt (PEW001)
Attorney for Plaintiffs

**OF COUNSEL:**
**JAMES P. PEWITT, LLC**
Two North Twentieth
2 20th Street North, Suite 925
Birmingham, AL 35203
Telephone: (205) 874-6686
jim@jamespewitt.com

**Plaintiffs Request Service By Certified Mail:**

Legacy Housing Corporation
c/o Incorp Services Inc., Registered Agent
4037 US 231 Ste A
Wetumpka, AL 36093

11

## VERIFICATION

I, Ebrahim Jebreel, am a managing agent of Springfield MHP, LLC, and Grasmere MHP, LLC, and I verify that the facts set forth in the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunctive Relief, and Damages are true and complete to the best of my knowledge and belief.

_____
Ebrahim Jebreel

STATE OF __Texas__    )

COUNTY OF __Harris__    )

I, __Ana Laura Salazar Uribe_____, a Notary Public in and for said County in said State, hereby certify that Ebrahim Jebreel, is signed to the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunctive Relief, and Damages, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he voluntarily executed the same on behalf and of the Plaintiffs.

Given under my hand and seal, this 13th day of May, 2025.



NOTARY PUBLIC

[SEAL]

My Commission Expires: __October 11, 2026__

Document Notarized using a Live Audio-Video Connection

1