FILED
2025 May-14  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

EXHIBIT C

# ALABAMA SJIS CASE DETAIL



**PREPARED FOR: W. SIMPSON**
5/14/2025 11:02:46 AM

County: **01**     Case Number: **CV-2025-901919.00**     Court Action:
Style: **SPRINGFILED MHP, LLC ET AL V. LEGACY HOUSING CORPORATION**



`Real Time`

## Case

### Case Information

| | | | | | |
|---|---|---|---|---|---|
| County: | **01-JEFFERSON - BIRMINGHAM** | Case Number: | **CV-2025-901919.00** | Judge: | **MYA:MONICA Y. AGEE** |
| Style: | **SPRINGFILED MHP, LLC ET AL V. LEGACY HOUSING CORPORATION** | | | | |
| Filed: | **05/14/2025** | Case Status: | **ACTIVE** | Case Type: | **REAL PROPERTY** |
| Trial Type: | **BENCH** | Track: | | Appellate Case: | **0** |
| No of Plaintiffs: | **2** | No of Defendants: | **1** | | |

### Damages

| | | | | | |
|---|---|---|---|---|---|
| Damage Amt: | 0.00 | Punitive Damages: | 0.00 | General Damages: | 0.00 |
| No Damages: | | Compensatory Damages: | 0.00 | | |
| Pay To: | | Payment Frequency: | | Cost Paid By: | |

### Court Action

| | | | | |
|---|---|---|---|---|
| Court Action Code: | | Court Action Desc: | | Court Action Date: |
| Num of Trial days: | 0 | Num of Liens: | 0 | Judgment For: |
| Dispositon Date of Appeal: | | Disposition Judge: | : | Disposition Type: |
| Revised Judgement Date: | | | | Appeal Date: |
| Date Trial Began but No Verdict (TBNV1): | | | | |
| Date Trial Began but No Verdict (TBNV2): | | | | |

### Comments

Comment 1:
Comment 2:

### Appeal Information

| | | | | |
|---|---|---|---|---|
| Appeal Date: | | Appeal Case Number: | | Appeal Court: |
| Appeal Status: | | Orgin Of Appeal: | | |
| Appeal To: | | Appeal To Desc: | | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | | Disposition Type Of Appeal: | | |

### Administrative Information

| | | | | |
|---|---|---|---|---|
| Transfer to Admin Doc Date: | | Transfer Reason: | | Transfer Desc: |
| Number of Subponeas: | | Last Update: | **05/14/2025** | Updated By: | **AJA** |

## Parties

### Party 1 - Plaintiff BUSINESS - SPRINGFILED MHP, LLC

#### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | **C001-Plaintiff** | Name: | **SPRINGFILED MHP, LLC** | Type: | **B-BUSINESS** |
| Index: | **D LEGACY HOUSI** | Alt Name: | | Hardship: **No** | JID: **MYA** |
| Address 1: | **C/O JAMES P. PEWITT** | | | Phone: **(205) 000-0000** | |

| | |
|---|---|
| Address 2: | **2 20TH ST., SUITE 925** |
| City: | **BIRMINGHAM**  State: **AL**  Zip: **35203-0000**  Country: **US** |
| SSN: | **XXX-XX-X999**  DOB:  Sex:  Race: |

### Court Action

| | | |
|---|---|---|
| Court Action: | | Court Action Date: |
| Amount of Judgement: **$0.00** | Court Action For: | Exemptions: |
| Cost Against Party: **$0.00** | Other Cost: **$0.00** | Date Satisfied: |
| Comment: | | Arrest Date: |
| Warrant Action Date: | Warrant Action Status: | Status Description: |

### Service Information

| | | | |
|---|---|---|---|
| Issued: | Issued Type: | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Notice of No Answer: Served By: |
| Answer: | Answer Type: | Notice of No Service: | |

### Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | PEW001 | | PEWITT JAMES PRICE | JIM@JAMESPEWITT.COM | (205) 874-6686 |

## Party 2 - Plaintiff BUSINESS - GRASMERE MHP, LLC

### Party Information

| | | | |
|---|---|---|---|
| Party: | **C002-Plaintiff** | Name: | **GRASMERE MHP, LLC** |
| Index: | **D LEGACY HOUSI** | Alt Name: | Type: **B-BUSINESS** |
| Address 1: | **C/O JAMES P. PEWITT** | | Hardship: **No**  JID: **MYA** |
| Address 2: | **2 20TH ST., SUITE 925** | | Phone: **(205) 000-0000** |
| City: | **BIRMINGHAM** | State: **AL** | Zip: **35203-0000**  Country: **US** |
| SSN: | **XXX-XX-X999** | DOB: | Sex:  Race: |

### Court Action

| | | |
|---|---|---|
| Court Action: | | Court Action Date: |
| Amount of Judgement: **$0.00** | Court Action For: | Exemptions: |
| Cost Against Party: **$0.00** | Other Cost: **$0.00** | Date Satisfied: |
| Comment: | | Arrest Date: |
| Warrant Action Date: | Warrant Action Status: | Status Description: |

### Service Information

| | | | |
|---|---|---|---|
| Issued: | Issued Type: | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Notice of No Answer: Served By: |
| Answer: | Answer Type: | Notice of No Service: | |

### Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | PEW001 | | PEWITT JAMES PRICE | JIM@JAMESPEWITT.COM | (205) 874-6686 |

## Party 3 - Defendant BUSINESS - LEGACY HOUSING CORPORATION

## Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | D001-Defendant | Name: | LEGACY HOUSING CORPORATION | Type: | B-BUSINESS |
| Index: | C SPRINGFILED | Alt Name: | | Hardship: **No** | JID: **MYA** |
| Address 1: | C/O INCORP SERVICES, INC. | | | Phone: | (205) 000-0000 |
| Address 2: | 4037 US 231, SUITE A | | | | |
| City: | WETUMPKA | State: | AL | Zip: | 36093-0000 Country: US |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: |

## Court Action

| | | | |
|---|---|---|---|
| Court Action: | | Court Action For: | Court Action Date: |
| Amount of Judgement: | $0.00 | | Exemptions: |
| Cost Against Party: | $0.00 | Other Cost: $0.00 | Date Satisfied: |
| Comment: | | | Arrest Date: |
| Warrant Action Date: | | Warrant Action Status: | Status Description: |

## Service Information

| | | | |
|---|---|---|---|
| Issued: **05/14/2025** | Issued Type: **C-CERTIFIED MAIL** | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Notice of No Answer: Served By: |
| Answer: | Answer Type: | Notice of No Service: | |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | 000000 | | PRO SE | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|---|---|---|---|---|---|---|---|---|---|
| ACTIVE | N | AOCC - CERT-AOC | C001 | | $12.66 | $12.66 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CONV - CONV FEE | C001 | | $18.55 | $18.55 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CVAP - CV ADDTL PLA | C001 | | $100.00 | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CV05 - CV OVER $50K | C001 | | $306.00 | $306.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | VADM - VADM FEE | C001 | | $45.00 | $45.00 | $0.00 | $0.00 | 0 |
| | | | Total: | | $482.21 | $482.21 | $0.00 | $0.00 | |

### Financial History

| Transaction Date | Description | Disbursement Accoun | Transaction Batch | Receipt Number | Amount | From Party | To Party | Money Type | Admin Fee | Reason | Attorney | Operator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/14/2025 | RECEIPT | AOCC - CERT-AOC | 2025158 | 42329000 | $12.66 | C001 | 000 | Credit Card | N | | | PDS |
| 05/14/2025 | CREDIT | CONV - CONV FEE | 2025158 | 42329100 | $18.55 | C001 | 000 | Cash | N | | | PDS |
| 05/14/2025 | RECEIPT | CVAP - CV ADDTL PLA | 2025158 | 42329200 | $100.00 | C001 | 000 | Credit Card | N | | | PDS |
| 05/14/2025 | RECEIPT | CV05 - CV OVER $50K | 2025158 | 42329300 | $306.00 | C001 | 000 | Credit Card | N | | | PDS |
| 05/14/2025 | RECEIPT | VADM - VADM FEE | 2025158 | 42329400 | $45.00 | C001 | 000 | Credit Card | N | | | PDS |

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|-------|------|------|----------|----------|
| 5/14/2025 | 9:46 AM | ECOMP | COMPLAINT E-FILED. | PEW001 |
| 5/14/2025 | 9:46 AM | FILE | FILED THIS DATE: 05/14/2025          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | ASSJ | ASSIGNED TO JUDGE: MONICA Y. AGEE          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | TDMN | BENCH/NON-JURY TRIAL REQUESTED          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 5/14/2025 | 9:46 AM | C001 | C001 PARTY ADDED: SPRINGFILED MHP, LLC          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | C001 | LISTED AS ATTORNEY FOR C001: PEWITT JAMES PRICE | AJA |
| 5/14/2025 | 9:46 AM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | C002 | C002 PARTY ADDED: GRASMERE MHP, LLC          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | C002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | C002 | LISTED AS ATTORNEY FOR C002: PEWITT JAMES PRICE | AJA |
| 5/14/2025 | 9:46 AM | C002 | C002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | D001 | D001 PARTY ADDED: LEGACY HOUSING CORPORATION(AV02) | AJA |
| 5/14/2025 | 9:46 AM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/14/2025 | 9:46 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 5/14/2025 | 9:47 AM | D001 | CERTIFIED MAI ISSUED: 05/14/2025 TO D001    (AV02) | AJA |
| 5/14/2025 | 9:47 AM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/14/2025 | 9:53 AM | EMOT | C001-C002-OTHER - MOTION FOR TEMPORARY RESTRAINING ORDER FILED. | PEW001 |
| 5/14/2025 | 9:54 AM | EMOT | C001-C002-OTHER /DOCKETED | SHB |

## Images

| Date: | Doc# | Title | Description | Pages |
|-------|------|-------|-------------|-------|
| 5/14/2025 9:46:42 AM | 1 | CIVIL_COVER_SHEET | CIRCUIT COURT - CIVIL CASE | 1 |
| 5/14/2025 9:46:43 AM | 2 | COMPLAINT | | 12 |
| 5/14/2025 9:46:44 AM | 3 | SUPPORTING DOCUMENT | EXHIBIT A | 2 |
| 5/14/2025 9:46:45 AM | 4 | SUPPORTING DOCUMENT | EXHIBIT B | 20 |
| 5/14/2025 9:46:46 AM | 5 | SUPPORTING DOCUMENT | EXHIBIT C | 2 |
| 5/14/2025 9:46:47 AM | 6 | SUPPORTING DOCUMENT | EXHIBIT D | 2 |
| 5/14/2025 9:46:48 AM | 7 | SUPPORTING DOCUMENT | EXHIBIT E | 7 |
| 5/14/2025 9:47:40 AM | 8 | COMPLAINT - TRANSMITTAL | E-NOTICE TRANSMITTALS | 2 |
| 5/14/2025 9:47:51 AM | 9 | COMPLAINT - SUMMONS | E-NOTICE TRANSMITTALS | 1 |
| 5/14/2025 9:53:22 AM | 10 | MOTION_COVER_SHEET | Motion Cover Sheet | 2 |
| 5/14/2025 9:53:23 AM | 11 | MOTION | MOTION FOR TEMPORARY RESTRAINING ORDER | 2 |
| 5/14/2025 9:53:28 AM | 12 | MOTION - TRANSMITTAL | E-NOTICE TRANSMITTALS | 2 |

 *END OF THE REPORT*

ELECTRONICALLY FILED
5/14/2025 9:46 AM
01-CV-2025-901919.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>01<br><br>Date of Filing:<br>05/14/2025      Judge Code: |
|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### SPRINGFILED MHP, LLC ET AL v. LEGACY HOUSING CORPORATION

**First Plaintiff:**  ☑ Business  ☐ Individual        **First Defendant:**  ☑ Business  ☐ Individual
                     ☐ Government  ☐ Other                                ☐ Government  ☐ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA  - Wrongful Death
☐ TONG  - Negligence: General
☐ TOMV  - Negligence: Motor Vehicle
☐ TOWA  - Wantonness
☐ TOPL  - Product Liability/AEMLD
☐ TOMM  - Malpractice-Medical
☐ TOLM  - Malpractice-Legal
☐ TOOM  - Malpractice-Other
☐ TBFM  - Fraud/Bad Faith/Misrepresentation
☐ TOXX  - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE  - Personal Property
☐ TORE  - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN  - Abandoned Automobile
☐ ACCT  - Account & Nonmortgage
☐ APAA  - Administrative Agency Appeal
☐ ADPA  - Administrative Procedure Act
☐ ANPS  - Adults in Need of Protective Service

**OTHER CIVIL FILINGS  (cont'd)**
☐ MSXX  - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
              Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT  - Civil Rights
☐ COND  - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP  - Contempt of Court
☐ CONT  - Contract/Ejectment/Writ of Seizure
☐ TOCN  - Conversion
☐ EQND  - Equity Non-Damages Actions/Declaratory Judgment/
              Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD  - Eviction Appeal/Unlawful Detainer
☐ FORJ  - Foreign Judgment
☐ FORF  - Fruits of Crime Forfeiture
☐ MSHC  - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB  - Protection From Abuse
☐ EPFA  - Elder Protection From Abuse
☐ QTLB  - Quiet Title Land Bank
☐ FELA  - Railroad/Seaman (FELA)
☑ RPRO  - Real Property
☐ WTEG  - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP  - Workers' Compensation
☐ CVXX  - Miscellaneous Circuit Civil Case

---

**ORIGIN:**   F ☑ INITIAL FILING        A ☐ APPEAL FROM          O ☐ OTHER
                                           DISTRICT COURT

             R ☐ REMANDED              T ☐ TRANSFERRED FROM
                                           OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**  ☐ YES  ☑ NO     **Note:** Checking "Yes" does not constitute a demand for a
                                                    jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:**        ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**

    PEW001                      5/14/2025 9:46:41 AM              /s/ JAMES P PEWITT
                                _____          _____
                                Date                             Signature of Attorney/Party filing this form

---

**MEDIATION REQUESTED:**        ☐ YES  ☑ NO  ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**  ☐ YES  ☑ NO

ELECTRONICALLY FILED
5/14/2025 9:46 AM
01-CV-2025-901919.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| SPRINGFIELD MHP, LLC, and GRASMERE MHP, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| LEGACY HOUSING CORPORATION, | ) ) |
| Defendant. | ) ) ) |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTIVE RELIEF, AND DAMAGES

### Introduction

In this Complaint, Plaintiffs, Springfield MHP, LLC ("Springfield") and Grasmere MHP, LLC ("Grasmere"), seek among other things a temporary restraining order from this Court prohibiting the Defendant, Legacy Housing Corporation ("Legacy") from proceeding with a non-judicial foreclosure sale of commercial property owned by Springfield and Grasmere, which is currently scheduled for May 20, 2025.

### Jurisdiction and Venue

1. This Court has jurisdiction pursuant to Sections 12-11-30(1), 12-11-31(3), and 12-11-33(2) of the Code of Alabama.

2. Venue is proper in this Court pursuant to Rule 82 of the Alabama Rules of Civil Procedure.

### Parties

3. Springfield and its affiliate, Grasmere, are Alabama limited liability companies. They own property in Jefferson County, Alabama (the "Property"). That Property, which is

1

identified in the legal description attached as Exhibit A, is currently used as a mobile or modular home park.

4.     Legacy is a Texas corporation.  It manufactures modular homes.

### The Facts

5.     In 2020, Springfield discussed the purchase or lease of six (6) modular homes from Legacy.  At the time, Legacy quoted a purchase price of roughly $33,000 per home. Springfield ultimately decided to lease the homes.  Legacy manufactured the homes and delivered them to Springfield within about three (3) months.

6.     On or about December 20, 2020, Springfield and Legacy entered into the transaction that is the subject of this dispute.  Springfield and Legacy signed a Promissory Note (the "Note"), pursuant to which Legacy loaned Springfield $300,000.00.  A true and correct copy of the Note is attached as Exhibit B.[1]  The purpose of the loan was to enable Springfield to improve the Property.

7.     The Note provides for a term of four (4) years.  The principal balance bears interest at 7.9%.  The Note required interest payments quarterly, with the entire principal balance due and payable on December 20, 2024.  Springfield and Grasmere gave Legacy a deed in trust and mortgage on the Property to secure the Note.

8.     Section 2 of the Note describes a mechanism for Springfield to purchase a certain number of modular homes from Legacy during the term of the Note.  Section 2 provides in its entirety as follows:

> In consideration for funds advanced, Maker agrees to purchase six (6) Legacy manufactured homes ("Homes") per quarter, beginning in the fourth (2nd) [sic] quarter of 2021, and continuing each quarter until Maker has purchased no fewer

---

[1] Although the face amount of the Note is $400,000.00, Legacy advanced only $300,000.00.

2

> than one hundred (100) Homes prior to the maturity date of the Note. Each Home will be produced in Legacy's Georgia facility. If in any quarter Maker fails to purchase six (6) homes Lender will assess a penalty of three-thousand dollars ($3000) per Home not purchased, said penalty to be added to the Principal Amount and against which interest may be assessed as specified under the terms of this Note.

Springfield intended to lease the modular homes to residents and to use the income stream from those leases to satisfy the Note.

9.    As the Court can see, Section 2 purports to assess a contractual "penalty" in the event the Homes are not purchased. Indeed, it uses the word "penalty" not once, but twice. Moreover, there is no description of the price Legacy intends to charge for the Homes or the time for Legacy's shipment or delivery of the Homes.

10.   In the fourth quarter of 2021, in accordance with Section 2 of the Note, Springfield placed an order for six (6) Homes. Springfield made a downpayment on the order.

11.   In the first quarter of 2022, again in accordance with Section 2 of the Note, Springfield placed an order for another six (6) Homes. Springfield again made a downpayment on the order.

12.   By February 2022, Legacy had increased the price for each Home by almost $20,000. Moreover, Legacy had not delivered any of the Homes. Springfield contacted Legacy numerous times, asking about the status of the Homes Springfield had ordered, but Legacy would not provide any definitive information or specific dates of delivery. On February 18, 2022, a Legacy employee told Springfield that Legacy had a backlog "of nearly a year."

13.   On March 3, 2022, Legacy emailed Springfield, stating that Legacy was incurring increased material costs, material shortages, supply chain and freight problems and that Legacy would be increasing its price (yet again). Obviously recognizing a significant change in

3

circumstances, Legacy offered Springfield an opportunity to cancel. Springfield promptly and reluctantly notified Legacy that Springfield was cancelling any orders, and any obligation to order, any Homes from Legacy.

14.     In the second quarter of 2022, Springfield heard nothing further from Legacy – no update on its pricing, no update on its delivery times, and no inquiry about Springfield's purchase of Homes.

15.     On August 31, 2022, Springfield again notified Legacy, this time in writing, that it considered any further obligation to purchase the Homes described in Section 2 of the Note to be cancelled. Springfield also asked Legacy to confirm its receipt and acknowledgement of Springfield's notice. Legacy, however, did not respond.

16.     In the fourth quarter of 2022, Springfield heard nothing further from Legacy about the purchase of Homes.

17.     In the first quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

18.     In the second quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

19.     In the third quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

20.     In the fourth quarter of 2023, Springfield heard nothing further from Legacy about the purchase of Homes.

21.     In the first quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

4

22. In the second quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

23. In the third quarter of 2024, Springfield heard nothing further from Legacy about the purchase of Homes.

24. Throughout the term of the Note, Springfield continued to make the interest payments required by the Note in a timely manner.

25. On September 13, 2024, Daren Starnes at Legacy sent an email to Springfield suggesting for the first time that, in addition to the original principal amount, Springfield owed $216,000.00 in contractual "penalties," or $3000 for each Home Springfield did not purchase during the term of the Note. Legacy offered no explanation or basis for the "penalties."

26. Not long thereafter, on November 21, 2024, Robert Oswald, a Finance Manager at Legacy, sent Springfield a letter confirming that the payoff o.n the Note did not include any "penalties," but rather was indeed only the original principal balance, or $300,000.00, plus a small amount of interest, for a total of $301,942.62. A copy of that letter is attached as Exhibit C

27. On December 12, 2024, Keaton Shepard, another Finance Manager at Legacy, sent an email to Springfield, again confirming that the payoff was $301,942.62 and again confirming that the payoff did not include any "penalties." A copy of that email is attached as Exhibit D.

28. On December 16, 2024, prior to the maturity date of the Note, Springfield informed Legacy that it was in the process of selling the Property and requested a short extension, so that a sale of the Property could be concluded and the Note paid from the sale proceeds. Over the course of the next day or so, Springfield provided Legacy with additional

details.  By January 2025, Springfield had received an offer of approximately $1,300,000.00, and it relayed that information to Legacy.

29.    Apparently, the sale caught the attention of Mr. Starnes.  Contrary to the payoffs that Legacy's finance managers had previously provided to Springfield, Mr. Starnes announced that the payoff on the Note was not $301,942.62, but rather $607,435.22, which now included approximately $300,000.00 in contractual "penalties."

30.    Springfield contested the "penalties" and engaged in extensive discussions with Legacy to resolve the dispute, but Legacy continued to demand that the "penalties" be paid.

31.    On April 23, 2025, Legacy initiated non-judicial foreclosure proceedings on the Property.  A copy of a letter from Legacy's Alabama counsel, demanding payment of $613,949.38 and enclosing a notice of foreclosure, is attached as Exhibit E.

32.    Any attempt by Springfield to tender less than the amount wrongfully demanded by Legacy would be futile at this point.

**COUNT I**

**DECLARATORY JUDGMENT**

33.    Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

34.    This count is brought pursuant to Alabama's Declaratory Judgment Act.  Ala. Code § 6-6-220 et seq.

35    Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that it is nothing more than a contractual penalty.  Such provisions are unenforceable as a matter of law.

6

36. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that the price Legacy ultimately sought to charge for the Homes was not reasonable.

37. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that Legacy could not deliver the Homes within a reasonable time.

38. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds the Legacy's breach of Section 2 substantially impaired the value of the contract, and Springfield seasonably notified Legacy of Springfield's cancellation.

39. Springfield is entitled to a declaration that Section 2 of the Note is void and unenforceable on the grounds that Legacy is estopped to now insist that Springfield owes contractual "penalties," that Legacy is guilty of laches, and that Legacy waived its ability to assess such "penalties."

WHEREFORE, Springfield demands a declaration that Section 2 of the Note is void and unenforceable and that any attempt by Legacy to collect or assess the contractual "penalties" set out in Section 2, including but not limited to the foreclosure currently set for May 20, 2025, would be wrongful and unlawful.

## COUNT TWO

## WRONGFUL FORECLOSURE

40. Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

41. Legacy has wrongfully and incorrectly calculated the balance due under the Note. Legacy is using foreclosure not for the purpose of securing its debt, but for the purpose of

7

oppressing Springfield, forcing Springfield to pay contractual "penalties" that it does not owe, and enabling Legacy to acquire the Property for itself.

WHEREFORE, Plaintiffs demand a temporary restraining order barring Legacy from proceeding with a non-judicial foreclosure on May 20, 2025, and preliminary injunctive relief barring Legacy from any foreclosure attempt based on a debt that is not owed.

**COUNT THREE**

**BREACH OF CONTRACT**

42.    Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

43.    Legacy has breached the Note, including but not limited to Section 2 of the Note, and has failed to act in good faith.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, interest, costs, and attorneys' fees.

**COUNT FOUR**

**NEGLIGENT MISREPRESENTATION**

44.    Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

45.    Legacy negligently misrepresented that it would be able to supply Homes to Springfield within a reasonable time and at a reasonable price.

46.    Legacy's representations were false, and Springfield has been damaged as a result.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, interest, costs, and attorney fees.

## COUNT FIVE

### SUPPRESSION

47.    Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

48.    Legacy intentionally suppressed and concealed its intent to insist upon the contractual "penalties" set out in Section 2 of the Note, despite its inability to provide the Homes described in Section 2. Given the parties' contractual relationship, course of performance, and written communication in August of 2022, Legacy was under a duty to disclose in 2022, again in 2023, and again in 2024, that it was continuing to accrue and assess the contractual "penalties" set out in Section 2. Legacy's failure to do so has damaged Springfield.

WHEREFORE, Springfield demands judgment against Legacy for compensatory damages, punitive damages, interest, costs, and attorney fees.

## COUNT SIX

### TORTIOUS INTERFERENCE

49.    Plaintiffs restate each of the allegations in the paragraphs of their Complaint as if fully set forth here.

50.    Legacy has wrongfully and intentionally interfered in the existing and potential business and contractual relationship between Plaintiffs and the putative buyer of the Property. Legacy has used its wrongful foreclosure to threaten the pending sale and thereby force Plaintiffs to concede to Legacy's wrongful demand that Springfield pay unenforceable "penalties." Legacy's actions have now not only delayed the planned sale of the Property, at significant cost to Plaintiffs, but have jeopardized Plaintiffs' ability to sell the Property at all. Legacy acted willfully and without justification.

9

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, costs, and attorney fees.

**COUNT SEVEN**

**SLANDER OF TITLE**

51.    Springfield restates each of the allegations in the paragraphs of their Complaint as if fully set forth here.

52.    By publishing notice of a non-judicial foreclosure sale based upon an incorrect, unlawful, and wrongful debt, Legacy has libeled and slandered Plaintiffs' title to the Property. Legacy falsely and maliciously impugned Plaintiffs' title.

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, costs, and attorney fees.

Respectfully submitted,

*s/ James P. Pewitt*
James P. Pewitt (PEW001)
Attorney for Plaintiffs

**OF COUNSEL:**
**JAMES P. PEWITT, LLC**
Two North Twentieth
2 20th Street North, Suite 925
Birmingham, AL  35203
Telephone: (205) 874-6686
jim@jamespewitt.com

**Plaintiffs Request Service By Certified Mail:**

Legacy Housing Corporation
c/o Incorp Services Inc., Registered Agent
4037 US 231 Ste A
Wetumpka, AL  36093

11

## **VERIFICATION**

I, Ebrahim Jebreel, am a managing agent of Springfield MHP, LLC, and Grasmere MHP, LLC, and I verify that the facts set forth in the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunctive Relief, and Damages are true and complete to the best of my knowledge and belief.



Ebrahim Jebreel

STATE OF ___Texas___     )

COUNTY OF ___Harris___     )

I, ___Ana Laura Salazar Uribe___, a Notary Public in and for said County in said State, hereby certify that Ebrahim Jebreel, is signed to the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunctive Relief, and Damages, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he voluntarily executed the same on behalf and of the Plaintiffs.

Given under my hand and seal, this 13th day of May, 2025.

ANA LAURA SALAZAR URIBE
ELECTRONIC NOTARY PUBLIC
STATE OF TEXAS
NOTARY ID: 131757026
COMISSION EXP: OCT 11, 2026

NOTARY PUBLIC

[SEAL]

My Commission Expires: ___October 11, 2026___

Document Notarized using a Live Audio-Video Connection

1

ELECTRONICALLY FILED
5/14/2025 9:46 AM
01-CV-2025-901919.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

# EXHIBIT A

## EXHIBIT A

Commence at the NE corner of the SE 1/4 of the SE 1/4 of Section 3, Township 17 South, Range 4 West, and run South along the East Section line for 808.55 feet to a 1" open pipe for the Point of Beginning; thence turn 90 degrees 26 minutes 17 seconds right, West for 199.70 feet to a 2" open pipe; thence turn 90 degrees 12 minutes 38 seconds left, South for 455.02 feet to a 1" open pipe; thence turn 90 degrees 09 minutes 23 seconds right, West for 464.96 feet to a capped rebar at the SW corner of Lot 6, Waverly Hills Subdivision, Sector Two and the East line of the SW 1/4 of the SE 1/4 of the SE 1/4 of said Section; thence turn 89 degrees 44 minutes 08 seconds right, North for 600.03 to a capped rebar at the NE corner of said 1/4 -1/4 - 1/4 Section; thence turn 89 degrees 46 minutes 15 seconds left, West along the North line of 663.82 feet to a capped rebar; thence turn 90 degrees 15 minutes 31 seconds left, South along the West line of the 1/4 - 1/4 for 662.43 feet to the NW corner of the NE 1/4 of the NE 1/4, Section 10, Township 17, Range 4 West, thence turn 00 degrees 58 minutes 11 seconds left, South for 1330.33 feet to the SW corner of the 1/4 - 1/4; thence 89 degrees 55 minutes 43 seconds left, North for 1327.08 feet to the SW corner of the SW 1/4 of the SW 1/4 of Section 2, Township 17, Range 4 West; thence North 00 degrees, 00 minutes, 00 seconds East for 1330 feet; thence turn 90 degrees 27 minutes 58 seconds right, East along the South line of the Section for 497.97 feet to the Westerly right-of-way of Minor Parkway; thence turn 98 degrees 21 minutes 39 seconds left, Northwesterly along the right-of-way for 523.12 feet to a 1/2" open pipe; thence turn 81 degrees 39 minutes 46 seconds left, West for 19.05 feet to a capped rebar; thence turn 47 degrees 21 minutes 45 seconds left for 23.92 feet to a concrete monument; thence turn 92 degrees 56 minutes 35 seconds right for 14.95 feet to a concrete monument; thence turn 88 degrees 32 minutes 34 seconds left, for 22.36 feet to a concrete monument; thence turn 92 degrees 10 minutes 08 seconds right for 15.19 feet to a concrete monument; thence turn 86 degrees 59 minutes 50 seconds left for 48.20 feet to a concrete monument on the Westerly right-of-way of Main Street; thence turn 93 degrees 53 minutes 08 seconds right, along right-of-way for 48.16 feet; thence turn 55 degrees 58 minutes 25 seconds left, West for 291.91 feet to the Point of Beginning.

ELECTRONICALLY FILED
5/14/2025 9:46 AM
01-CV-2025-901919.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

# EXHIBIT B

**Loan 1320.43**

## PROMISSORY NOTE

**Note Date**: December 20, 2020

**Maker:**    Springfield MHP, LLC

**Payee:**    Legacy Housing Corporation

**Place for Payment**:

> Legacy Housing Corporation
> Attn: Jeff Burt
> 1600 Airport Freeway, Suite 100
> Bedford, Tarrant County, TX 76022

**Principal Amount**: $400,000

**Maturity Date**: December 20, 2024

**Security Instrument**: Mortgage

1. **Promise to Pay.**

    **FOR VALUE RECEIVED, Springfield MHP, LLC** (the "Maker," which term includes any heirs or assigns), promises to pay to **Legacy Housing Corporation** ("Lender") (Lender, for so long as it shall be the holder of this Note, and any successor or assignee of Lender, for so long as such successor or assignee shall be the holder of this Note, being the "Holder"), at the times, in the manner, and with interest at the rates hereinafter provided, the outstanding amounts advanced by Lender, who may determine when and how much to advance in its sole and unilateral discretion, and now outstanding, which may total up to $400,000 (the "Principal Amount) for the primary purpose of paying off sewer liens and financing real property development (see Exhibit A for description of property) pledged by the Deed of Trust of even date herewith from Maker to Jeff Burt, Trustee (collectively, the "Property".)

2. **Agreement to Purchase Legacy Homes.**

    In consideration for funds advanced, Maker agrees to purchase six (6) Legacy manufactured homes ("Homes") per quarter, beginning in the fourth (2nd) quarter of 2021, and continuing each quarter until Maker has purchased no fewer than one hundred (100) Homes prior to the maturity date of the Note. Each Home will be produced in Legacy's Georgia facility. If in any quarter Maker fails to purchase six (6) homes Lender will assess a penalty of three-thousand dollars ($3,000) per Home not purchased, said penalty to be added to the Principal Amount and against which interest may be assessed as specified under the terms of this Note.

3. **Principal Amount of Note.**

The principal amount of this Note at any given time shall be the portion of the Principal Amount that is then outstanding.

**4. Maturity Date.**

This Note shall mature on December 20, 2024 (the "Maturity Date").

**5. Computation of Interest.**

(a) Interest on the outstanding principal amount shall accrue from the date on which this Note is made.

(b) The interest rate applicable to all amounts due under this Note shall be 7.9% per annum on the outstanding principal balance.

(c) If any payment due under this Note is late, the interest rate applicable to the principal amount of this Note shall be 17.5% per annum, until such time as the Note is brought current.

(d) Interest will be calculated on the unpaid principal to the date of each payment based on 365 days per year.

**6. Payment of Principal and Interest.**

Maker will make only quarterly interest payments in the amount of 7.9% per annum, beginning on January 20, 2020 and continuing for each quarter (e.g., April 20, July 20, October 20, and so on.) On December 20, 2024 the entire remaining principal balance and accrued but unpaid interest shall be due and payable.

**7. Manner of Making Payments.**

Each payment under this Note shall be paid in immediately available funds by electronic funds transfer to the account as required under the payment terms of this Note.

**8. Late Payments.**

In the event that any payment of any amount owing under this Note is not made within 10 days of the date on which it becomes due, then the amount payable shall be such overdue amount, including all interest accrued thereon (including interest accruing after the due date) at the applicable interest rate (the "Overdue Amount"), plus a delinquency charge equal to five percent (5%) of the Overdue Amount.

**9. Pre-Payment.**

The Maker may elect to prepay all or any portion of the outstanding principal amount of this Note only after completion of the purchase of one hundred (100) Legacy homes as specified under Paragraph 2 of this Agreement. If the Maker elects to prepay all or any portion of the loan the Maker must still adhere to the requirements of the Deed of Trust.

**10. Amendments to Note.**

To the extent not inconsistent with applicable law, this Note shall be subject to modification by such amendments, extensions, and renewals as may be agreed upon in writing from time to time by the Holder and the Maker.

## 11. Certain Waivers.

The Maker hereby waives any requirement for presentment, protest and demand and notice of protest and demand, notice of dishonor or default, notice of intention to accelerate maturity, and notice of acceleration of maturity that may be required in connection with such debt obligations.

## 12. Effective Until Fully Performed.

This Note shall continue in full force and effect until all amounts due and payable hereunder have been paid in full and all obligations under the Note and Deed of Trust have been fulfilled.

## 13. Security.

This Note is secured by a deed of trust of even date (the "Deed of Trust"), whereby the Maker pledged and granted a security interest in the Property and all rental or other income derived from, or ancillary to, use of the property in order to secure the performance of all obligations under this Note and the payments of any other debts owed to Lender.

## 14. Default and Enforcement.

It is agreed that time is of the essence of this Note. The transfer by Maker of any part of the Property without Lender's prior written consent, any failure of the Maker to timely make the payments due under this Note, or to timely perform any of its other obligations under this Note or the Deed of Trust, including the purchase of one hundred (100) Legacy homes, constitutes an "Event of Default." If this Note, the Deed of Trust or Personal Guaranty are given to an attorney for collection or enforcement, or suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceedings, then the Maker shall pay the Holder all costs of collection and enforcement, including reasonable attorneys' fees and court costs, in addition to other amounts due. The Maker agrees to pay reasonable attorney fees for collection and/or enforcement of this Note, Deed of Trust or Personal Guaranty regardless of whether the attorney assigned to collect or enforce the Note is a salaried employee of the Holder.

## 15. Acceleration.

Upon an Event of Default, the entire unpaid principal amount of this Note, and all interest thereon, may be declared, and upon such declaration shall become, immediately due and payable to the Holder of this Note without notice or presentment.

## 16. Assignment and Novation.

The rights and benefits under this Note are assignable by Lender and any Holder. Lender and any Holder may also mutually agree to novate all of their obligations, benefits and rights under this Note. Any assignment or novation by the Maker is void.

## 17. Governing Law.

All questions concerning the construction, validity, interpretation, and enforcement of this Note shall be governed by the laws of the State of Texas. Any dispute arising out of, or concerning, this Note, shall be brought exclusively in the state of federal courts of Tarrant County, Texas. When the context requires, singular nouns and pronouns include the plural.

## 18. Notices.

Any notice or delivery required or permitted by this Note shall be ineffective unless and until it is made to the addresses listed above for the Maker or Lender, or to such other address as the Maker, Lender or any Holder may designate in a writing delivered to the latest address provided by the recipient.

## 19. Joint and Several Obligations.

Each and every individual or entity comprising the Maker is jointly and severally liable for the obligations of Maker under this Note.

**IN WITNESS WHEREOF,** the Maker has executed this Note as of the day and year first above written.

**MAKER**

Springfield MHP, LLC

Name: _____

Title: _____

Date Executed: December _14_, 2020

## Exhibit A

Commence at the NE corner of the SE 1/4 of the SE 1/4 of Section 3, Township 17 South, Range 4 West, and run South along the East Section line for 808.55 feet to a 1" Open Pipe for the Point of Beginning; thence turn 90°26'17" Right, west for 199.70 feet to a 2" Open Pipe; thence turn 90°12'38" left, south for 455.02 fee to a 1" Open Pipe; thence turn 90°09'23" right, west for 464.96 feet to a capped rebar at the SW corner of Lot 6, Waverly Hills Subdivision, Sector Two and the East line of the SW 1/4 of the SE 1/4 of the SE 1/4 of said Section; thence turn 89°44'08" right, north for 600.03 to a capped rebar at the NE corner of said 1/4-1/4-1/4 section; thence turn 89°46'15" left, west along the North line of 663.82 feet to capped rebar; thence turn 90°15'31" left, south along the West line of 1/4 1/4 for 662.43 feet to the NW corner of the NE 1/4 of the NE 1/4, Section 10, Township 17, Range 4 West, thence turn 0°58'11" left, South for 1330.33 feet to the SW corner of said 1/4 ¼; thence 89°55'43" left, North for 1327.08 feet to the SW corner of the SW 1/4 of the SW 1/4 of Section 2, Township 17, Range 4 West; thence turn 90°27'58" Right, East along the South line of Section for 497.97 feet to the Westerly Right-of-way of Minor Parkway; thence turn 98°21'39' left, northwesterly along Right-of-Way for 523.12 feet to a 1/2" Open Pipe; thence turn 81°39'46" left, West for 19.05 feet to a Capped Rebar; thence turn 47°21'45' left, for 23.92 feet to a Concrete Monument; thence turn 92°56'35" right for 14.95 feet to a Concrete Monument; thence turn 88°32'34" left, for 22.36 feet to a Concrete Monument; thence turn 92°10'08" right, for 15.19 feet to a Concrete Monument; thence turn 86°59'50' left, for 48.20 feet to a Concrete Monument on the Westerly Right-of-Way of Main Street; thence turn 93°53'08" right, along Right-of-Way for 48.16; thence turn 55°58'25" left, West for 291.91 feet to the Point of Beginning.

**STATE OF ALABAMA**

**JEFFERSON COUNTY**

# MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS:**

THIS MORTGAGE is made on the _____ day of December, 2020, by and between Springfield MHP, LLC and Grasmere MHP, LLC, whose mailing address is 10850 Wilshire Blvd., Suite 301, Los Angeles, California 90024 (hereafter referred to as "Mortgagor") and Legacy Housing Corporation, its successors and/or assigns, whose mailing address is 1600 Airport Freeway, Suite 100, Bedford, Texas 76022 (hereafter referred to as "Mortgagee".)

That, Mortgagor is justly indebted to Mortgagee in the original principal sum of Four Hundred Thousand and 00/100 Dollars ($400,000.00) (hereafter referred to as "Loan") in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of that certain promissory note (hereinafter referred to as the "Note"), of even date herewith, bearing interest at the rate specified therein, and maturing on December 20, 2024, (unless sooner called or unless sooner paid in full) at which time all sums remaining unpaid under the Note or this Mortgage shall become due and payable. The Note, by reference, is hereby incorporated herein. Mortgagor covenants and agrees that Mortgagor's failure to pay the Note in accordance with its terms shall be deemed a default under this Mortgage, thereby entitling the Mortgagee to the remedies provided herein upon the happening of an event of default hereunder;

This instrument is made and intended to secure the payment of the indebtedness of Mortgagor to Mortgagee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness now owing or which may hereafter be owing by Mortgagor to Mortgagee, however incurred, including advances by Mortgagee, or any transferee of Mortgagee, for the purpose of paying taxes or premiums on insurance on the Premises or to repair, maintain or improve the Premises (as hereinafter defined, whether or not Mortgagor is at that time the owner of the Premises) and all renewal or renewals and extension or extensions of the Note or other indebtedness, either in whole or in part (all of which are sometimes hereinafter collectively referred to as "Secured Indebtedness").

**NOW, THEREFORE,** Mortgagor, in consideration of Mortgagee's making the Loan, and to secure the prompt payment of same, with the interest thereon, and any extensions, renewals, modifications and refinancing of same, and any charges herein incurred by Mortgagee on account of Mortgagor, including but not limited to attorney's fees, and any and all other indebtedness as set forth above, and further to secure the performance of the covenants, conditions and agreements hereinafter set forth and set forth in the Note and set forth in all other documents evidencing, securing or executed in connection with the Loan (this Mortgage, the Note and such other documents evidencing or securing the Loan, collectively referred to hereafter as "Loan Documents"), and as my be set forth in instruments evidencing or securing the other indebtedness and by these presents does grant, bargain, sell, convey and confirm unto Mortgagee (whether one or more), and to its successors and assigns, the real property described

1

on **Exhibit "A"** attached hereto and made a part hereof for all purposes, together with all of Mortgagor's interest in building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, trees and plants; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Mortgage; and all of the foregoing, together with said property (hereafter referred to as the "Premises").

**TO HAVE AND TO HOLD** the Mortgaged property unto the Mortgagee, its successors and assigns, subject to the terms and conditions herein.

1. PURPOSE OF CONVEYANCE: This Conveyance is made to further secure payment of all amounts with interest thereon becoming due and payable to the Mortgagee under the Note or this Mortgage, including (but not limited to) any extension, renewal or re-amortization of said debt, any increase or addition thereto and any future debt owing by Mortgagor to the Mortgagee, it being contemplated that Mortgagor may become further obligated to Mortgagee in the future and that Mortgagor may make further advances to Mortgagee that will be secured by this Mortgage, the payment thereof being secured or intended to be secured hereby and to further secure performance and discharge of each and every promise, obligation, covenant and agreement of Mortgagor contained in the Note, this Mortgage or any other instrument executed by Mortgagor pertaining to said debt or the security therefor.

2. ADDITIONAL SECURITY: As additional security for the payment of said debt, Mortgagor hereby transfers and assigns unto the Mortgagee the following:
  (a) All rents, royalties, profits, issues and revenues of the Land and Improvements from time to time accruing, whether under leases or tenancies now existing or hereafter created;
  (b) All judgments, awards of damages and settlements hereinafter made resulting from condemnation proceedings or the taking of all or any part of the Premises under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets. The Mortgagee is hereby authorized, but shall not be required, on behalf and in the name of Mortgagor, to execute and deliver acquittances for, and to appeal from, any such judgment or awards. The Mortgagee may apply all such sums or any part thereof so received, after the payment of all expenses, including costs and attorney's fees, on the debt in such manner as the Mortgagee elects;
  (c) All easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, leases, subleases, licenses, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances whatsoever, in any way belonging, relating or appertained to any of the property hereabove described, or which hereafter shall in

2

any way belong, relate to be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, or Mortgagor of, in and to the same.

(d) All accounts, general intangibles, contracts and contract rights relating to the Land and Premises, whether now owned or existing or hereafter created, acquired or arising, including without limitation, all construction contracts, architectural service contracts, management contracts, leasing agent contract, purchase and sales contracts, put or other option contracts, and all other contracts agreements relating to the construction of Premises;

(e) All licenses, franchise agreements, and other agreements affecting the use, enjoyment or occupancy of the Land or Premises, or any other portion thereof currently or hereafter entered into, whether before or after the filing by or against Mortgagor or any petition for relief under the Bankruptcy Code, together with all receivables, revenues, rentals, receipts and payment, received from the rental or rentals, meeting rooms, beverage or food sales, and facilities, vending machines, telephone systems, resident laundry and all other payments received from residents or visitors of the Land, and other items of revenue, receipts or income;

(f) All licenses, development permits, building permits, utility supply agreements, sewer and water discharge permits and agreements, and other licenses, permits and agreement relating to the use development, construction, occupancy and operation of the Land and Premises, whether now or hereafter issued or executed, and all modifications, amendments, replacements or re-issuance of the foregoing; and

(g) All cash and non-cash proceeds and all products of any of the foregoing items or types of property described in (a) through (f) above, including, but not limited to, all insurance, contract and tort proceeds and claims, and including all inventory, accounts, chattel paper, documents, instruments, equipment, fixtures, consumer goods and general intangibles acquired with cash proceeds of any of the foregoing items or types of property described above.

3. FIRST MORTGAGE LIEN: This Mortgage is executed as a first lien encumbrance upon the Premises for the purpose of securing the Secured Indebtedness. The proceeds of the Note, to the extent that same are utilized to take up any outstanding liens against the Premises, or any portion thereof, have been advanced by the Mortgagee at Mortgagor's request and upon Mortgagor's representation that such amounts are due and are secured by valid liens against the Premises. The Mortgagee shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by the Mortgagee by assignment or are released by the holder thereof upon payment.

4. COVENANTS OF MORTGAGOR: Mortgagor further covenants and agrees:

(a) That Mortgagor will pay the principal of and interest on the Note in accordance with the terms thereof. That Mortgagor is seized of the Premises and is entitled to convey the same; that Mortgagor will make such further assurance of title as may be necessary to fully confirm to Mortgagee the title to the Premises. Upon any failure of Mortgagor to do so, the Mortgagee may make, execute and record any and all such instruments, certificates and documents, for and in

3

the name of the Mortgagor and the Mortgagor hereby irrevocably appoints the Mortgagee the agent and attorney-in-fact of Mortgagor so to do.

(b) That all awnings, door and window screens, storm window screens, storm windows and doors, cabinets, rugs, carpeting, linoleum, stoves, shades, blinds, oil and other fuel-burning systems and equipment, water heaters, radiator covers, and all plumbing, heating, lighting, ventilating, cooling, air-conditioning and refrigerating apparatus and equipment, and such goods and chattels and personal property as are ever furnished by landlords in letting or operating an unfurnished building, or which are or shall be attached to said building by nails, screws, bolts, pipe connections, masonry or in other manner, and all additions thereto and replacements thereof, and such built-in equipment as shown by plans and specifications, are and shall be deemed to be fixtures and accessions to the Premises, being hereby agreed to be immovables and a part of the realty as between the parties hereto, and shall be deemed to be a part and portion of the Premises.

(c) That Mortgagor will pay (prior to delinquency) all taxes and assessments levied or assessed upon the Premises when due, or the interest created therein by this Mortgage and exhibit the receipts therefor to the Mortgagee (unless such payments are made by the Mortgagee, as hereinafter provided), and will defend the title and possession of the premises to the end that this Mortgage shall be and remain a valid lien on the Premises until the debt is paid. That Mortgagor will pay all attorney's fees and expenses which may be incurred by the Mortgagee in enforcing the terms of the Note and this Mortgage or in any suit which the Mortgagee may become a party where this Mortgage or the Premises is in any manner involved, and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt. Notwithstanding anything to the contrary in this paragraph, Mortgagor shall have the right to contest, at its expense, any of the taxes and assessments levied or assessed upon the Premises but only in the event Mortgagor shall provide adequate security, whether by bonds otherwise, for the benefit of the person entitled to receive payment of such taxes, liens, assessments and other charges. Such security shall be deemed adequate if it legally supersedes the right of the creditor to foreclose on the Premises or discharges the claim as a lien against the Premises.

(d) That Mortgagor will keep all insurable Premises insured for the protection of the Mortgagee against loss by fire, hazards included within the term "extended coverage" including flood (if the Premises are located in an identified "flood hazard area", in which flood insurance has been made available, pursuant to the National Flood Insurance Act of 1968), and such other hazards as Mortgagee may require, in such manner, in such amounts, and by such companies as the Mortgagee may approve, and keep the policies thereof or, properly endorsed on deposit with the Mortgagee. If renewal policies are not delivered to the Mortgagee fifteen (15) days before the expiration of the existing policy or policies, with evidence of premiums paid, the Mortgagee may, but is not obligated to, obtain the required insurance on behalf of Mortgagor (or insurance in favor of the Mortgagee alone) and pay the premiums thereon. Mortgagor hereby assigns to Mortgagee all right and interest in all such policies of insurance and authorizes the Mortgagee to collect for, adjust or compromise any losses under any insurance policy on the Premises, and loss proceeds (less expense of collection) shall, at the Mortgagee's option, be applied on the debt, whether due or not, or to the restoration of the Premises, or be released to Mortgagor, but such application or release shall not cure or waive any default; provided, however, if less than fifty percent (50%) of the improvements constituting a portion of the Mortgaged Premises are damaged or destroyed and said destruction or damage can be repaired and such improvements can be restored to their condition immediately prior to the damage or destruction within one hundred twenty (120) days of the date of destruction or damage thereto, Mortgagor shall be

4